UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

SYNERGY AEROSPACE CORP.,                  :
                                          :
        Plaintiff,                      :
                                          :       16cv2268
        -against-                      :
                                          :       OPINION & ORDER
LLFC CORPORATION and U.S. BANK            :
NATIONAL ASSOCIATION,                     :
                                          :
        Defendants.                     :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

WILLIAM H. PAULEY III, District Judge:

        Defendant and Counterclaim/Cross-Claim Plaintiff U.S. Bank National Association ("U.S. Bank") moves for an award of reasonable attorneys' fees pursuant to an escrow agreement between plaintiff Synergy Aerospace Corp. ("Synergy") and defendant LLFC Corporation ("LLFC").

## BACKGROUND

        Synergy filed this breach of contract action against LLFC and U.S. Bank in connection with LLFC's failure to complete its purchase of three Airbus aircraft. Specifically, Synergy alleged that LLFC failed to remit the balance of the purchase price, and U.S. Bank failed to release an $800,000 down payment held in escrow. (ECF No. 1.)

        U.S. Bank interposed counterclaims and cross-claims for indemnification and interpleader relief. (ECF Nos. 19, 22.) At an initial pre-trial conference on June 17, 2016, this Court suggested that Synergy consent to U.S. Bank depositing the escrow funds into the Court Registry Investment System ("CRIS"). Within a week, Synergy agreed. (See Supplemental Declaration of Irving Apar, Aug. 11, 2016 ("Apar Supp. Decl.") (ECF No. 54), ¶ 11.) On July 5,

2016, the parties filed a stipulation depositing the funds into a CRIS account and dismissing U.S. Bank from the action. (ECF No. 29.) A month later, Synergy and LLFC settled their dispute.

The only outstanding issue in this case is the amount of reasonable attorneys' fees owed to U.S. Bank. Pursuant to the terms of the Escrow Agreement, Synergy and LLFC agreed to indemnify U.S. Bank against

> any and all . . . costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) incurred by or asserted against any of the Indemnified Parties, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand suit, action or proceeding.

(ECF No. 1, Ex. 2, ¶ 11.) Thompson Hine LLP ("Thompson Hine") represented U.S. Bank in this action.

Thompson Hine's initial motion for attorneys' fees sought reimbursement for $114,613.30[1] and consisted of a nine-page declaration attaching contemporaneous time records together with a two-page "Memorandum of Law" that cited no law. (See ECF Nos. 38–40.) That application infused new life in this litigation, overshadowing the underlying dispute. Indeed, Thompson Hine and Synergy's counsel have sparred over the sealing of documents, the timing of escrow fund disbursements, and the need for additional filings. And in a supplemental declaration, Thompson Hine seeks another $32,674.11 for 52.9 hours of professional time, primarily for preparation of a reply brief in support of its motion. (ECF Nos. 62, 63.)

## DISCUSSION

Courts in this Circuit "apply New York substantive law to resolve the dispute regarding [a party's] entitlement to attorney's fees." Mid-Hudson Catskill Rural Migrant

---

[1] Because U.S. Bank declined to pay 1.8 hours of paralegal time, totaling $477 and $235.80 in disbursements, it correspondingly lowered the amount of attorneys' fees it is seeking from $115,326.30 to $114,613.50. (See Apar Supp. Decl., ¶¶ 4, 15.)

Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005).  Under New York law, promises to indemnify another for attorneys' fees incurred in litigation between them should not be enforced "unless the intention to do so is unmistakably clear from the language of the [agreement]."  U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 75 (2d Cir. 2004). When the language is clear, courts must ensure that the fees sought are reasonable.  See 6D Glob. Techs., Inc. v. Lu, No. 15-cv-1120 (LGS), 2016 WL 1756920, at *4 (S.D.N.Y. May 3, 2016); Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co., No. 00-cv-5963 (NT), 2006 WL 1539341, at *2 (S.D.N.Y. June 5, 2006) ("Although the Indemnity Agreement clearly states that the Indemnitors are liable for all attorneys' fees and other expenses those fees must be reasonable in nature." (internal quotation marks omitted)).

In determining reasonableness, Courts employ the "presumptively reasonable fee" standard, which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted).  To calculate the presumptively reasonable fee, "courts typically start with a determination of the lodestar amount, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Exp. Dev. Canada v. Bonilla, No. 13-cv-4952 (KBF), 2014 WL 713470, at *4 (S.D.N.Y. Feb. 19, 2014) (quoting Healey v. Leavitt, 458 F.3d 63, 71 (2d Cir. 2007); Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." (internal quotation marks omitted)).

But "[t]he product of reasonable hours times a reasonable rate does not end the

inquiry. . . . [O]ther considerations . . . may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). For instance, courts consider a number of factors in adjusting the lodestar amount:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430.

 I. Reasonable Hourly Rate

Courts "assess[] the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits." Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). "To determine the prevailing market rate, '[t]he rates used by the court should be current rather than historic hourly rates.'" Anthony, 844 F. Supp. 2d at 507 (quoting Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006)). "Additionally, courts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted." Anthony, 844 F. Supp. 2d at 507 (citations and internal quotation marks omitted). The Second Circuit also suggests that judges consider:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

4

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 184 (2d Cir. 2008).

Thompson Hine charged hourly rates ranging from $625 to $765 for partner time, $480 for associate time, and $265 for paralegal time. (See Declaration of Irving Apar, July 21, 2016 ("Apar Decl.") (ECF No. 40), ¶¶ 25–29.) Synergy proposes that this Court reduce these rates to $425 for partners, $325 for associates, and $140 for paralegals. But this suggestion relies on dated case law and does not reflect current market rates. More recently, "New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour. . . . New York district courts have also recently approved rates for law firm associates in the range of $200 to $450 per hour . . . and for law firm paralegals in amounts of approximately $200 per hour." Genger v. Genger, No. 14-cv-5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) (citation omitted)); Capitol Records, Inc. v. MP3tunes, LLC, No. 07-cv-9931 (WHP), 2015 WL 7271565, at *4 (S.D.N.Y. Nov. 12, 2015) (finding $720 and $698 per hour to be "at the high end of what judges in this District have awarded for experienced partners in copyright cases").

Additionally, negotiation and regular payment of hourly rates by a sophisticated party is "solid evidence of their reasonableness." Prospect Capital Corp. v. Enmon, No. 08-cv-3721 (LBS), 2010 WL 2594633, at *4 (S.D.N.Y. June 23, 2010). Here, U.S. Bank received a 10% discount on Thompson Hine's normal rates. (Apar Supp. Decl., ¶ 7.) U.S. Bank has also paid, or approved for payment the vast majority of Thompson Hine's invoices. (Sept. 29, 2016 Letter from Rebecca Brazzano, ECF No. 64.)

Thus, while at the high end, Thompson Hine's rates fall into the range of what courts in this district generally view as reasonable.

II.     Reasonable Hours

In addition to determining the reasonableness of the hourly rates, courts must also ensure the reasonableness of the hours billed. Courts consider the "contemporaneous time records . . . that specify, for each attorney, the date, hours expended, and nature of the work done, and its own familiarity with the case . . . and its experience generally." Mugavero v. Arms Acres, Inc., No. 03-cv-5724 (PGG), 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (citation and internal quotation marks omitted). "Courts base the hours inquiry not on what appears necessary in hindsight, but on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Mugavero, 2010 WL 451045, at *6 (citation and internal quotation marks omitted).

Courts "should exclude from this initial fee calculation hours that were not reasonably expended." Hensley, 461 U.S. at 434 (internal quotation marks omitted). "To that end, '[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" Ognibene v. Parkes, No. 08-cv-1335 (LTS), 2014 WL 3610947, at *3 (S.D.N.Y. July 22, 2014) (quoting Hensley, 461 U.S. at 434). And "courts have reduced or even disallowed requested attorneys' fees where the supporting time records were not broken out with sufficient detail to enable it to determine the reasonableness of the time spent on particular tasks." Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, No. 10-cv-5256 (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012).

Thompson Hine submitted invoices showing 243.4 hours of professional time. (Apar Decl., Ex. 5; Sept. 12, 2016, Second Supplemental Declaration of Irving Apar (ECF No. 62), ¶ 5.) Synergy argues convincingly that these hours reflect unnecessary work, overstaffing, duplicative hours, and vague and block-billing entries.

Thompson Hine billed for work that could have been obviated. For example, Thompson Hine billed 55.6 hours between April 18 and May 25, 2016 to prepare a motion for summary judgment and interpleader relief so that "it could be ready by the July 8 deadline if needed." (Apar Supp. Decl., ¶ 11.) However, this Court's Individual Rules of Practice require parties to submit a letter—no longer than three-pages—requesting a pre-motion conference prior to filing any motion. Had Thompson Hine complied, it would have only needed to prepare a short and straightforward pre-motion letter rather than drafting a full-blown motion that was never filed. Moreover, at the Initial Pre-trial Conference on June 17, 2016, this Court suggested that a motion was unnecessary and urged Synergy to agree to place the funds in a CRIS account and dismiss U.S. Bank from the action. One week later, Synergy agreed.

Similarly, Thompson Hine billed 22.2 hours of attorney time preparing the nine-page declaration and two-page "Memorandum of Law" on their fee application. Thompson Hine also billed more than 34 hours preparing reply papers, which consisted of a short declaration with exhibits and a ten-page memorandum—this time with case citations. In total, Thompson Hine seeks compensation for over 50 hours of work on its application for attorneys' fees. That is excessive.

Further, some of the invoice "entries lack the detail necessary for this Court to determine the reasonableness of the time spent." Capitol Records, 2015 WL 7271565, at *3. A review of the invoices reveal multiple instances of vague entries, such as "[a]ttention to case docket," "review consent," and "[c]ommunications regarding pre-trial conference." (Apar Decl., Ex. 5.) And some invoices contain block billing. "As a general rule, block billing is disfavored" because it impedes courts' ability to "assess whether the time expended on any given task was reasonable." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015). But

the block-billed entries in Thompson Hine's invoices "contain enough detail so as to afford confidence that the time billed was productively spent, 'even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry.'" Capitol Records, 2015 WL 7271565, at *3 (quoting Beastie Boys, 112 F. Supp. 3d at 53).

Finally, Thompson Hine's staffing structure warrants a reduction in fees. Three partners, one associate, and one paralegal billed on this engagement. There were no novel issues of law or fact, and the escrow dispute was in the mine-run of cases. Aside from its motion for attorneys' fees, U.S. Bank's counsel filed no motions, took no discovery, and appeared for only a single conference.

While U.S. Bank is entitled to reasonable attorneys' fees under its escrow agreement, the sum of $147,287.61 is an excessive transaction cost for parties who deposited $800,000 in escrow and simply named the escrow agent, U.S. Bank, as a party in this litigation.[2]

III.   Aggregate Fee Reduction

This Court finds that an aggregate reduction in U.S. Bank's fee application is warranted. "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." Capitol Records, 2015 WL 7271565, at *5 (citation omitted). In view of the unnecessary and excess work and the vague and block-billed entries, a 40% reduction is warranted. Accordingly, this Court awards $88,372.57 in attorneys' fees and disbursements to U.S. Bank.

---

[2] Thompson Hine argues that the fact that U.S Bank has paid its invoices on this matter is evidence of their reasonableness. However, that argument loses considerable strength when one considers the additional fact that U.S. Bank was aware, as escrow agent, that it would receive at least some reimbursement by the parties.

## CONCLUSION

U.S. Bank's motion for attorneys' fees is granted in part and denied in part. U.S. Bank is awarded $88,372.57 in attorneys' fees and disbursements. The parties are directed to submit, consistent with this Opinion and Order, a proposed order for the disbursement of funds from the CRIS account by October 7, 2016. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: October 3, 2016
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.